CHARLES RAPPAPORT *vs.* CITY OF LAWRENCE.

Essex.    March 4, 1941. — April 3, 1941.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Municipal Corporations,* Officers and agents, Municipal finance.    *Civil Service.* Contract, Of employment.

The original appointment of a civil service employee of a city, even if defective, was ratified by the city's paying his full salary for several years, and such alleged defect did not affect his right to recover his salary during later years.

A civil service employee of a city, who had not been suspended nor lowered in compensation by any lawful action and had performed his duties throughout a certain year and had not acquiesced in a failure

of the city to pay his compensation for the last part thereof, was entitled to recover the unpaid compensation from the city in an action of contract where there had been a sufficient appropriation to pay his compensation for the whole year but a part of the appropriation had been unlawfully diverted to other purposes.

CONTRACT. Writ in the District Court of Lawrence dated January 3, 1940.

Upon removal to the Superior Court, the action was heard by *Buttrick,* J.

The case was submitted on briefs.

*J. P. Kane,* City Solicitor, for the defendant.

*M. J. Batal & M. Rappaport,* for the plaintiff.

DOLAN, J. This is an action of contract to recover wages, alleged to be due the plaintiff for services rendered by him to the defendant. The judge found for the plaintiff, and the case comes before us on the defendant's exceptions to the denial of its requests for rulings.

The evidence tended to show the following facts. The plaintiff is a civil service employee of the defendant with a rating as "Supervisor Instructor — Caretaker" of swimming pools. Prior to September 5, 1935, he had been a "permanent recurrent" employee of the defendant under the designation of "Instructor — Caretaker." On the date just mentioned he was promoted to be "Supervisor Instructor — Caretaker" of swimming pools by the alderman-director of "Public Property and Parks" at $38.50 a week less ten per cent for 1935, "To be employed year round." He was promoted to take the place of one Allicon who died on June 18, 1934. His promotion was authorized by the civil service commission. No written acceptance of the position was ever made by the plaintiff. His appointment was made after the "acceptance" of the budget for 1935, and no supplementary budget was passed.

The plaintiff was paid his wages in 1935, 1936 and 1937. He performed his duties in 1938 and 1939, but was not paid his wages for certain weeks in November and December, 1938, and in December, 1939, although in those years sufficient money to pay his wages in full was included in the budget for his department for swimming pools and was

appropriated by votes of the city council. In November, 1938, when he did not receive his pay, the plaintiff talked with the alderman-director of his department, who told him the appropriation had been exhausted, that "it would straighten out somehow but to work . . . ." He did so. In December, 1939, under similar circumstances, he talked with the alderman-director and was informed that there was not enough money left to pay him. The plaintiff continued to perform his duties. No written notice was ever given the plaintiff or the civil service commission of suspension from work or lowering of his compensation, as required by G. L. (Ter. Ed.) c. 31, § 43.

The judge found specifically that the plaintiff is a permanent employee under civil service; that in the years in question there was in the itemized account in the budget submitted by the mayor the sum of $2,002 for the salary of the supervisor of swimming pools, the plaintiff being the only one in that class; that the budget was approved; that "the appropriation was exhausted by using for purposes other than the plaintiff's salary"; that the latter was told to carry on and the matter would be adjusted later; and that the plaintiff continued his services and performed them faithfully. The judge denied the defendant's eighteen requests for rulings.

The only contentions of the defendant that relate to the questions of law raised by its exceptions to the denial of its requests for rulings are that the plaintiff's appointment was never validly made; that even if he was a civil service employee that fact did not give him "the right to continued employment at the expense of municipal economy"; and that, to permit him to recover the wages in question would be in violation of the municipal finance act and the defendant's city charter. (St. 1911, c. 621.)

In support of the first contention set forth above, the defendant argues that the plaintiff's "appointment" in September, 1935, was a "new position" or "increase in rate," and that, having been made after the submission of the annual budget and no provision having been made therefor by a supplementary budget, as required by the municipal

finance act, G. L. (Ter. Ed.) c. 44, § 33A, it was invalid from the time when it was made. We do not adopt that view, and are of opinion that the case of *McHenry* v. *Lawrence*, 295 Mass. 119, cited by the defendant, is distinguishable in its facts. In that case the actions were brought by the plaintiffs to recover salary for the period between their appointments and the adoption under G. L. (Ter. Ed.) c. 44, §§ 32, 33A, of the annual budget. The amounts subsequently appropriated in that budget were insufficient to pay their salaries, and no further appropriation therefor was made by supplementary budget. It was held that they could not recover, and that their appointments as salaried employees (they had been promoted from employment as reserve firemen or reserve police officers to be permanent members of the regular forces) were "invalid from the moment when they were made." In the present case, however, we are not concerned with a claim for wages for any period in the year 1935. The record does not disclose that the original budget submitted for that year did not include a sufficient appropriation to pay the increased rate of compensation fixed for the position to which the plaintiff was promoted. It would seem a fair inference, however, from the fact that his wages were paid in that year that provision therefor had been made in the regular budget in accordance with the requirements of the statutes. In any event, he has continued to hold his position in the succeeding years, has been carried throughout upon the civil service rolls, and in each of the years with which we are here concerned sufficient appropriation was made to pay his wages. In these circumstances, even if it could be said that his original promotion to the position he has occupied since was in some respect defective, we think that it must be held to have been validly ratified. Compare *Costello* v. *North Easton Village District*, 205 Mass. 54, 59. There is nothing in the record to show that the failure of the defendant to pay his wages in the periods involved was due to uniform reductions such as were considered in *Alger* v. *Justice of the District Court of Brockton*, 283 Mass. 596, and *Openshaw* v. *Fall River*, 287 Mass. 426. The admitted fact is

that the money appropriated to pay his wages in full was unlawfully used in part for other purposes.

There is nothing in the provisions of G. L. (Ter. Ed.) c. 44 (the municipal finance act) or in the provisions of the defendant's city charter, St. 1911, c. 621 (providing for a commission form of government), considered as a whole (see *Goodale* v. *County Commissioners*, 277 Mass. 144, 151) that bars recovery by the plaintiff. *Barnard* v. *Lynn*, 295 Mass. 144, 146, 147. On the contrary, by § 34 of Part II of the city charter it is provided that no sum appropriated for a specific purpose shall be used for any other purpose. In its brief the defendant concedes that the money appropriated to pay the plaintiff was "misused by the aldermen." This is not a defence to the plaintiff's claim for wages for which specific appropriation had been made, and under which the liability to pay the plaintiff was properly incurred by or in behalf of the city under its charter, as well as under c. 44.

The present case is largely governed by prior decisions of this court under which it is established that the failure of a city to appropriate sufficient money to pay the salaries or wages of those in the classified public service, without taking lawful measures to reduce their number or their compensation, does not affect its obligation and liability to pay them. The city "cannot remain inactive, permit the employees to work at the rate of wages lawfully fixed, and then set up a lack of money as an excuse for not paying them." *Barnard* v. *Lynn*, 295 Mass. 144, 147. *Callahan* v. *Woburn*, 306 Mass. 265, 267, 276, and cases cited. Manifestly in the instant case where an appropriation was made sufficient to pay the plaintiff's wages, it cannot be said that he stands in worse case than he would had no, or an insufficient, appropriation been made therefor, and no lawful action was taken by the city under G. L. (Ter. Ed.) c. 31, § 43.

Since the plaintiff was a permanent employee in the classified public service of the city at the times in question, it follows that he could not have been suspended or lowered in compensation by the defendant except for just cause and for reasons specifically given him in writing within

twenty-four hours after such action.  G. L. (Ter. Ed.) c. 31, § 43.  This statute not having been complied with in the present case, the action of the city in failing to pay the plaintiff his wages for the weeks in question was not effective to relieve it of its contractual obligation to pay them. The fact that the plaintiff took no steps to seek a hearing under the statute does not affect this result.  He never received the notice provided for in the statute, he did not acquiesce in the failure of the defendant to pay his wages, and did not cease to perform his duties, but continued to perform them.  The present case is distinguishable in these facts from *Branche* v. *Fitchburg,* 306 Mass. 613, 615.  See *Ransom* v. *Boston,* 192 Mass. 299, 307.

The defendant's requests for rulings, being inconsistent with the view we have taken, were properly refused.

*Exceptions overruled.*