HENRY E. BAKER *vs.* COMMONWEALTH.

MARTIN J. KELLY *vs.* SAME.

Suffolk.   November 9, 1942. — December 1, 1942.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Commonwealth*, Contracts, Financial matters.   *Contract*, Validity, With Commonwealth.

Under § 26 of G. L. (Ter. Ed.) c. 29, § 27 as amended by St. 1937, c. 359, and § 3 of St. 1938, c. 356, a contract executed in October, 1938, by the State quartermaster and calling for an expenditure for which no part of an appropriation made by § 2 of said c. 356, Item 138, was then available, was unenforceable where it did not appear that the contract was executed in a case of emergency with the approval of the Governor and Council.

The Treasurer of the Commonwealth had no authority to credit to the account of the State quartermaster a sum received by the quartermaster from a State commission in reimbursement for an expense incurred and paid by the quartermaster in behalf of the commission, nor could such sum be added to a balance then standing to the credit of the quartermaster so as to increase that balance to an amount sufficient to make enforceable a contract entered into by the quartermaster.

Two PETITIONS, filed in the Superior Court on February 17, 1942.

The cases were heard by *Williams*, J.

There was nothing in the record to show that the Governor and Council had given written approval of the contracts relied on by the petitioners.

*N. H. Kolodny*, for the petitioners.

*W. L. MacIntosh*, Assistant Attorney General, for the Commonwealth.

RONAN, J.    These are petitions filed under G. L. (Ter. Ed.) c. 258, against the Commonwealth, the first by Baker to recover $8,500 for repairs made on the Holyoke Armory and the second by Kelly to recover $7,400 for similar work performed at the Worcester Armory.    The material was supplied and the work was furnished by the petitioners in accordance with written contracts dated October 24, 1938, and executed October 28, 1938, by each of them with the State quartermaster, described therein as "Quartermaster General, Executive Dept."    The general appropriation act enacted in May, 1938, appropriated to the service of the quartermaster "For the maintenance of armories of the first class, including the purchase of certain furniture, a sum not exceeding one hundred ninety-six thousand dollars." St. 1938, c. 356, § 2, Item 138.    This general appropriation act provided in § 3 that "No liabilities in excess of appropriations provided for under this act shall be incurred by any department or institution, except in cases of emergency, and then only upon the prior written approval of the governor and council."    On October 26, 1938, this appropriation had all been expended except the sum of $6,581.47.    The unemployment compensation commission had occupied and used certain armories which caused an expense to the quartermaster amounting to $10,539.23.    This he paid or contracted to pay.    On October 27, 1938, this sum was paid by the commission by check to the quartermaster and was credited upon his books, which then showed an unexpended balance of $17,120.70.    The check was delivered by the quartermaster to the State treasurer and credited by the State comptroller to the quartermaster, but the comptroller, on November 30, 1938, at the end of the fiscal year, struck out such credit.    The petitioners have not been paid

and their contention is that the sum of $10,539.23 should have been included in the unexpended balance of the quartermaster, which then would have been sufficient to pay them. The judge ruled that, upon the case stated upon which the petitions were submitted, the petitioners were not entitled to recover and ordered judgments for the Commonwealth. The petitioners appealed.

The liability of the Commonwealth depends upon the sufficiency of the appropriation available to the quartermaster to pay the petitioners the amounts mentioned in their contracts. It does not appear as a fact from the case stated that any portion of the unexpended balance amounting to $6,581.47 was, in truth, available for the payment of the claims of the petitioners when the alleged contracts were made. *Adams* v. *County of Essex*, 205 Mass. 189. *Dyer* v. *Boston*, 272 Mass. 265. *Burt* v. *Municipal Council of Taunton*, 275 Mass. 535. *McHenry* v. *Lawrence*, 295 Mass. 119. His authority to contract in behalf of the Commonwealth was limited by G. L. (Ter. Ed.) c. 29, § 27, as amended by St. 1937, c. 359, which, in so far as material, provides that "No officer or board shall incur a new or unusual expense, [or] make a permanent contract . . . unless a sufficient appropriation to cover the expense thereof has been made by the general court." See now St. 1939, c. 502, § 13. The power of the quartermaster to contract with these petitioners in behalf of the Commonwealth depended upon the adequacy of his appropriation to pay the indebtedness that would be thereby incurred, *Smith* v. *Lowell*, 190 Mass. 332; *Costello* v. *North Easton Village District*, 205 Mass. 54; *Burt* v. *Municipal Council of Taunton*, 275 Mass. 535, and it was the duty of the petitioners in contracting with the Commonwealth to ascertain the authority of the public officer who purported to act for the Commonwealth. *Boston Electric Co.* v. *Cambridge*, 163 Mass. 64. *Wormstead* v. *Lynn*, 184 Mass. 425. *Meader* v. *West Newbury*, 256 Mass. 37. Moreover, it is provided by G. L. (Ter. Ed.) c. 29, § 26, that "No obligation incurred by any officer or servant of the commonwealth in excess of the appropriation for the office, department or institution which he rep-

resents shall impose any liability upon the commonwealth."
See now St. 1939, c. 502, § 12. This broad provision was
designed to require an official or a department to keep ex-
penditures within the amount appropriated and to protect
the public credit by preventing the incurring of any in-
debtedness against the Commonwealth for the payment of
which no provision had been made by the Legislature.
Under such statutory provisions, there is no liability in the
absence of an appropriation available for its payment.
*Morse* v. *Norfolk County,* 170 Mass. 555. *Adams* v. *County
of Essex,* 205 Mass. 189. *Twombly* v. *Selectmen of Billerica,*
262 Mass. 214. *Dyer* v. *Boston,* 272 Mass. 265. *McHenry*
v. *Lawrence,* 295 Mass. 119. *Peters* v. *Medford,* 295 Mass.
588. *Continental Construction Co.* v. *Lawrence,* 297 Mass.
513. *McCarthy* v. *Malden,* 303 Mass. 563. *Sheils* v. *Com-
monwealth,* 306 Mass. 535.

The power to appropriate public funds for the payment
of expenses incurred in maintaining the State government is
vested in the Legislature, Constitution, Part I, art. 23;
Part II, c. 1, § 1, art. 4; § 3, art. 7; *Opinion of the Justices,*
294 Mass. 616, 621; 302 Mass. 605, 612, and the underly-
ing purpose of art. 63 of the Amendments as modified by
art. 72 is to centralize the financial affairs in its own treas-
ury and to place the supervision and control of the ex-
penditure of these funds upon the Legislature through the
medium of a budgetary system. *Opinion of the Justices,*
297 Mass. 577, 580; 308 Mass. 601, 614. *Howes Brothers
Co.* v. *Unemployment Compensation Commission,* 296 Mass.
275.

One State department cannot transfer a part of the funds
appropriated to it to another department. That in effect
would be to decrease the amount appropriated to it by the
Legislature and to increase the appropriation made by the
Legislature for the other department. No department has
any voice in determining the amount of money that should
be made available for the use of some other department.
If that were permissible there would be little left to the
fiscal arrangement set up by this constitutional amend-
ment imposing responsibility upon the General Court for

the management of the financial affairs of the Commonwealth.

By the general appropriation bill, St. 1938, c. 356, § 3, a method was provided by which, in cases of emergency, a liability in excess of the amount appropriated might be incurred by a department if the prior written approval had been given by the Governor and Council. Recourse to the remedy provided by this section might have been had if the circumstances were such as to warrant such approval, and if liability to pay the petitioners was to be freed from the contingency of the adequacy of the appropriation.

In the next place, upon the receipt by the treasurer of this check of the commission, the treasurer would have no authority to segregate this money and to pay it out solely for the official benefit of the State quartermaster. In so far as the check was drawn upon funds appropriated for the commission — and there is nothing in the agreed facts to show that it was drawn upon any other funds — the amount represented by the check did not become a part of the funds already appropriated to the State quartermaster for the maintenance of armories. The amount of this check, therefore, could not be added to the unexpended balance of the appropriation made for the quartermaster, and, it not being shown that any of the actual unexpended balance of the appropriation made for him was available for the satisfaction of the claims of the petitioners, there was no error in ordering judgments for the Commonwealth. *Adams* v. *County of Essex*, 205 Mass. 189. *Simpson* v. *Marlborough*, 236 Mass. 210. *Twombly* v. *Selectmen of Billerica*, 262 Mass. 214. *Dyer* v. *Boston*, 272 Mass. 265. *McHenry* v. *Lawrence*, 295 Mass. 119. *Peters* v. *Medford*, 295 Mass. 588. *Sheils* v. *Commonwealth*, 306 Mass. 535.

In each case the entry will be

*Order for judgment affirmed.*