CHARLES A. KELLEY & others *vs.* LAWRENCE H. SULLIVAN & others.

Suffolk.    January 28, 1909. — February 12, 1909.

Present : KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Corporation,* By-Laws. *Fraternal Beneficiary Corporation. Words,* "Appropriate," "Sum," "Dollars."

A fraternal and charitable corporation, called a lodge, was incorporated for the purposes of assisting indigent sick or distressed members in the order, assisting in defraying the funeral expenses of the deceased members and similar works of charity in this Commonwealth, and, in doing its work through appropriate agencies, could be assumed to be accustomed to appropriate money in the hands of its treasurer. It was the owner of real estate worth about $60,000, and sums of money belonging to it amounting to $1,000 or more were deposited in banks from time to time, or were invested otherwise. A by-law of the corporation provided "that a four-fifths vote of the lodge shall be required to appropriate a sum exceeding $50." *Held,* that this by-law related only to the appropriation of sums of money, and had no reference to the ordinary transactions of the corporation in which no money was appropriated to a particular use and no reference to contracts merely creating an obligation of the corporation, so that it did

not relate to contracts to sell or purchase real estate or to exchange real estate for other real estate, and such contracts could be authorized by a majority of the members at a meeting regularly called and held.

KNOWLTON, C. J.    This is a bill in equity brought by a minority of the members of Boston Lodge Number 10, Benevolent and Protective Order of Elks, a fraternal and charitable corporation, against that corporation and its principal officers, and the principal officers of Boston University, another corporation, to set aside the action of the first mentioned corporation by a vote accepting an option given by Boston University to buy certain real estate on Somerset Street called the Jacob Sleeper Hall, at a certain price, and to pay for it by a conveyance of real estate owned by the first corporation, on Columbus Avenue in Boston, and by a note and mortgage for the balance of the purchase price.    The option was accepted by a vote of one hundred and eighty-seven members in the affirmative to seventy-nine members in the negative.    The vote is attacked on the ground that a by-law of the corporation provides " that a four-fifths vote of the lodge shall be required to appropriate a sum exceeding fifty dollars."    It is also averred that the meeting was illegal for want of a proper notice.    The bill asks for an injunction against proceedings under the vote.    The case is before us on the defendant's demurrer.    Various grounds of demurrer were stated, but the bill was amended in such a way as to render all of them immaterial except that relating to the application of this by-law to the vote, and that relating to the notice of the meeting.    The judge * sustained the demurrer as to the notice, and we understand that neither party cares to attack the decision in that particular.    The only question that was argued by either party is whether the vote was void as a violation of the by-law.

The language of the by-law quoted above refers only to the appropriation of a sum of money.    The appropriation of money by a vote is a common proceeding in the governing bodies of States and municipalities, and other corporations or associations. To " appropriate " money, or anything else, is to set it apart or

---

* *Wait*, J., who, being of the opinion that the interlocutory decree made by him so affected the merits of the controversy that the matter ought, before further proceedings, to be determined by the full court, reported the case to this court for such determination.

assign it to a particular use or purpose.    This is the meaning of the word as given, in substance, by all the leading lexicographers. This meaning has been recognized by the courts in numerous cases, especially when the word has been used in connection with other language like that of this by-law.    *Ristine* v. *State*, 20 Ind. 328, 337, 338.    *State* v. *Moore*, 50 Neb. 88, 96.    *Shattuck* v. *Kincaid*, 31 Ore. 379.    *Canandaigua* v. *Hayes*, 90 App. Div. (N. Y.) 336, 341.    The word " sum " used in the by-law is restricted in its application to money, except where a different meaning plainly appears.    *Halstead* v. *Meeker*, 3 C. E. Green, 136, 140.    *In re Hulburt*, 89 N. Y. 259, 262.    So too the word " dollars " means money, in the form of the lawful currency of the United States.    *The Confederate Note Case*, 19 Wall. 548, 557.    *Howes* v. *Austin*, 35 Ill. 396.    *State* v. *Downs*, 148 Ind. 324, 327.    *United States* v. *Van Auken*, 96 U. S. 366, 368. *Halstead* v. *Meeker*, 3 C. E. Green, 136, 139.

The language of the by-law in its general meaning refers to the setting apart of a sum of money in the treasury of the corporation, or elsewhere subject to its control, and assigning it to a particular use.

The ordinary business of a corporation is usually done under a majority vote.    The contention of the plaintiffs is that this by-law prevents the transaction of any business that creates an obligation of the corporation to an amount exceeding $50, except by a four fifths vote of the members present and voting. If they are right, it would be impossible for the corporation to buy a desk, or any other necessary articles of furniture of more than $50 in value, unless four fifths of the members present at a meeting had agreed in authorizing the purchase.    It is not to be assumed that the corporation has so restricted its action without plain language to show it.    It appears by the bill that it is the owner of real estate worth about $60,000, that sums of money amounting to $1,000 or more, belonging to the corporation, are deposited in banks from time to time, or are otherwise invested. It is very improbable that such a corporation should have intended to divest itself of the power to make a contract creating a liability of more than $50 without the authority of a four fifths vote.    If this had been its purpose it would have been easy to express it plainly in a by-law.

The constitution of the corporation is not before us, nor are any of its by-laws except the extracts recited in the bill. We do not know the reason for this limitation upon the power of appropriation, but we may infer something from the facts stated. In one part of the bill there is a reference to " the amount of unappropriated cash in the hands of the treasurer," and in another place there is a reference to the " unappropriated moneys in excess of said one thousand dollars." It is implied that in doing its work the corporation, through appropriate agencies, is accustomed to appropriate money in the hands of the treasurer. It is averred in the bill that the purposes for which it was incorporated are, " the assisting indigent sick or distressed members in the said order, assisting in defraying the funeral expenses of the deceased members and similar works of charity in this Commonwealth." It seems probable that appropriations of money are made from time to time for these purposes, and that it was intended to limit such appropriations to an amount not exceeding $50 in any one case, unless it is of such peculiar merit in its requirement of a larger sum, as to be approved by four fifths of the members who consider it.

We are of opinion that this by-law has no reference to ordinary transactions of the corporation in which no money is appropriated to a particular use, and that this contract, which was authorized by a large majority of the members, is entirely outside of its provisions.

The fact that, as a part of the proposed contract, the real estate of the corporation was to be given in part payment for the estate to be purchased does not bring the transaction within the by-law. The by-law relates to the appropriation of sums of money. It does not relate to contracts to sell real estate, or to exchange real estate for other real estate, or to any contract which merely creates an obligation of the corporation, or involves a disposition of property when there is no appropriation of a sum of money to a particular use.

*Demurrer sustained.*

*C. W. Bartlett & A. T. Smith,* (*W. H. Crone* with them,) for the plaintiffs.

*J. A. Sullivan,* (*J. F. Lynch & E. M. Schwarzenberg,*) for the defendants.